CR 12 - 617

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★  SEP 25 2012  ★

BROOKLYN OFFICE

JM:SMH/SCJ
F.#2012R01353

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -

OLGA NOVOGORODSKY,
OKON UMANA, M.D.,
IGOR ISHCHUK,
IGOR KULESHOV,
LEONID ZALKIND,
    also known as "Lenny" and
    "Lenya,"
NIAZALY KAIPOV,
    also known as "Niaz,"
YEFIM MORCHIK,
    also known as "Fima,"
PAVEL ZBOROVSKIY,
    also known as "Pasha" and
    "Paul," and
GREGORY KONOPLYA,
    also known as "Grisha,"

          Defendants.

- - - - - - - - - - - - - -X

*BRODIE, J.*

**I N D I C T M E N T**

Cr. No. _____
(T. 18, U.S.C., §§ 371,
982(a)(1), 982(a)(7),
982(b), 1347, 1349,
1956(a)(1)(A)(i),
1956(a)(1)(B)(i),
1956(h), 2 and 3551 et seq.;
T. 42, U.S.C., §§
1320a-7b(b)(1) and
1320a-7b(b)(2))

THE GRAND JURY CHARGES:

INTRODUCTION

    At all times relevant to this Indictment, unless

otherwise indicated:

I.    Background

    A.   The Medicare and Medicaid Programs

        1.   The Medicare program ("Medicare") was a federal

health care program providing benefits to persons who were over

the age of 65 or disabled.  Medicare was administered by the

Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services.  Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

2.  Medicare covered the costs of physicians' services and outpatient care, such as physical therapy, occupational therapy and diagnostic tests.  Generally, Medicare covered these costs if, among other requirements, they were medically necessary and ordered by a physician.

3.  The New York State Medicaid program ("Medicaid") was a federal and state health care program providing benefits to individuals and families who met financial and other eligibility requirements. CMS was responsible for overseeing the Medicaid program in participating states, including New York. Individuals who received benefits under Medicaid were also referred to as "beneficiaries."

4.  Medicaid covered the costs of medical services and products ranging from routine preventive medical care for children to institutional care for the elderly and disabled. Among the specific medical services and products provided by Medicaid were physical therapy and diagnostic tests.  Generally, Medicaid covered these costs if, among other requirements, they were medically necessary and ordered by a physician.

2

5.   Medicare and Medicaid were each a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

6.   A physician or medical clinic that sought to participate in Medicare or Medicaid would obtain a provider identification number ("PIN").  The PIN allowed a physician or medical clinic to submit claims to Medicare and Medicaid for reimbursement of the cost of treatment they provided to beneficiaries.  A medical provider was required to use its PIN when submitting a claim for reimbursement.

7.   Medical providers were authorized to submit claims to Medicare and Medicaid only for services they actually rendered and were required to maintain patient records verifying the provision of services.  By submitting the claim, the provider certified, among other things, that the services that were rendered to the patient were medically necessary.

8.   Medicaid covered the transportation of beneficiaries to and from Medicaid providers by ambulette to receive Medicaid covered services when such transportation was medically necessary because the beneficiary could not otherwise be transported by public transportation, taxi or livery service.

B.   The Companies and the Defendants

9.   Cropsey Medical Care PLLC ("Cropsey") was a New York State Professional Limited Liability Corporation doing

3

business in Brooklyn, New York.  Cropsey was certified to participate in the Medicare and Medicaid programs.  Cropsey purported to provide, among other things, physical therapy, diagnostic testing, nerve conduction tests, podiatry services, urology services and other related services to Medicare and Medicaid beneficiaries.

10.  Almaz Transportation, Inc. ("Almaz") was a New York corporation doing business in Brooklyn, New York.  Almaz was authorized by Medicaid to transport beneficiaries to medical clinics so the beneficiaries could receive medical services. Almaz transported beneficiaries to Cropsey and billed Medicaid for such transportation.

11.  G & M Ambulette Service, Inc. ("G&M") was a New York corporation doing business in Brooklyn, New York.  G&M was authorized by Medicaid to transport beneficiaries to medical clinics so the beneficiaries could receive medical services. G&M transported beneficiaries to Cropsey and billed Medicaid for such transportation.

12.  Legal Ambulette Service, Inc. ("Legal Ambulette") was a New York corporation doing business in Brooklyn, New York. Legal Ambulette was authorized by Medicaid to transport beneficiaries to medical clinics so the beneficiaries could receive medical services. Legal Ambulette transported

4

beneficiaries to Cropsey and billed Medicaid for such transportation.

13.    The defendant OLGA NOVOGORODSKY was the manager of Cropsey.  Among other things, NOVOGORODSKY managed the daily operations of Cropsey.

14.    The defendant OKON UMANA, M.D., was the medical director and a rendering physician at Cropsey.

15.    The defendant IGOR ISHCHUK was an employee of Cropsey.

16.    The defendants YEFIM MORCHIK, also known as "Fima," PAVEL ZBOROVSKIY, also known as "Pasha" and "Paul," and GREGORY KONOPLYA, also known as "Grisha," were patient recruiters.

17.    The defendants IGOR KULESHOV, LEONID ZALKIND, also known as "Lenny" and "Lenya," NIAZALY KAIPOV, also known as "Niaz," and PAVEL ZBOROVSKIY, also known as "Pasha" and "Paul," conducted financial transactions for Cropsey.

II.  The Fraudulent Scheme

18.    From approximately November 2009 to October 2012, the defendants OLGA NOVOGORODSKY, OKON UMANA, M.D. and IGOR ISHCHUK, together with others, executed a fraudulent scheme in which they paid and caused to be paid cash kickbacks to Medicare and Medicaid beneficiaries to induce those beneficiaries to travel to Cropsey and to submit to physicians' services,

physical therapy and diagnostic tests that they did not need.
The defendants also created and caused to be created fraudulent
medical records for these beneficiaries which, among other
things, falsely reflected that the beneficiaries received
medical services that were never provided and falsely indicated
that prescribed treatments were medically necessary.  The
defendants then caused the submission of false and fraudulent
claims to Medicare and Medicaid on behalf of Cropsey and
rendering physicians that sought reimbursement for the services
listed in the fraudulent medical records.  As a result of this
fraudulent scheme, Cropsey submitted more than $8.1 million in
fraudulent claims to Medicare.  Also as a result of this
fraudulent scheme, Cropsey submitted more than $5.7 million in
fraudulent claims to Medicaid.

        19. The defendants YEFIM MORCHIK, also known as
"Fima," PAVEL ZBOROVSKIY, also known as "Pasha" and "Paul," and
GREGORY KONOPLYA, also known as "Grisha," paid and received cash
kickbacks to Medicare and Medicaid beneficiaries and others to
induce the transportation of beneficiaries to and from Cropsey
and other locations to supposedly receive medical services.

        20. By transporting, and causing to be transported,
beneficiaries to and from Cropsey, the defendants YEFIM MORCHIK,
also known as "Fima," PAVEL ZBOROVSKIY, also known as "Pasha"
and "Paul," and GREGORY KONOPLYA, also known as "Grisha," were

able to submit, and cause to be submitted, claims to Medicaid for transportation services.

21.    The defendants OLGA NOVOGORODSKY, OKON UMANA, M.D., and others wrote checks from Cropsey's bank accounts that received Medicare and Medicaid reimbursements to companies controlled by the defendants IGOR KULESHOV, LEONID ZALKIND, also known as "Lenny" and "Lenya," NIAZALY KAIPOV, also known as "Niaz," and PAVEL ZBOROVSKIY, also known as "Pasha" and "Paul," to them individually and to other individuals associated with them.    These checks did not represent payment for any legitimate service at or for Cropsey.    Instead, the defendants KULESHOV, ZALKIND, KAIPOV and ZBOROVSKIY cashed the checks to obtain cash to be paid as kickbacks to beneficiaries.

COUNT ONE
(Conspiracy to Commit Health Care Fraud)

22.    The allegations contained in paragraphs 1 through 21 are realleged and incorporated as if fully set forth in this paragraph.

23.    In or about and between November 2009 and October 2012, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants OLGA NOVOGORODSKY and OKON UMANA, M.D., together with others, did knowingly and willfully conspire to execute a scheme and artifice to defraud one or more health care benefit programs, specifically Medicare and Medicaid, and to obtain, by means of

7

materially false and fraudulent pretenses, representations and promises, money and property owned by and under the custody and control of Medicare and Medicaid, in connection with the delivery of and payment for health care benefits, items and services, contrary to Title 18, United States Code, Section 1347.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

### COUNT TWO
(Conspiracy to Receive and Pay Health Care Kickbacks)

24.   The allegations contained in paragraphs 1 through 21 are realleged and incorporated as if fully set forth in this paragraph.

25.   In or about and between November 2009 and October 2012, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants OLGA NOVOGORODSKY, OKON UMANA, M.D., IGOR ISHCHUK, YEFIM MORCHIK, also known as "Fima," PAVEL ZBOROVSKIY, also known as "Pasha" and "Paul," and GREGORY KONOPLYA, also known as "Grisha," together with others, did knowingly and willfully conspire:

a.   to solicit and receive cash kickbacks directly and indirectly, overtly and covertly, (1) in return for referring Medicare and Medicaid beneficiaries to Cropsey, Almaz, G&M and Legal Ambulette for the furnishing of and arranging for the furnishing of items and services for which payment may be

8

made in whole and in part under Medicare and Medicaid, and (2) in return for purchasing, leasing, and ordering, and arranging for and recommending purchasing, leasing and ordering goods, facilities, services and items for which payment may be made in whole and in part under Medicare and Medicaid, contrary to Title 42, United States Code, Section 1320a-7b(b)(1); and

   b. to offer and pay cash kickbacks directly and indirectly, overtly and covertly, to persons to induce those persons (1) to refer Medicare and Medicaid beneficiaries to Cropsey, Almaz, G&M and Legal Ambulette for the furnishing of and arranging for the furnishing of items and services for which payment may be made in whole and in part under Medicare and Medicaid, and (2) to purchase, lease, order and arrange for and recommend purchasing, leasing and ordering goods, facilities, services and items for which payment may be made in whole and in part under Medicare and Medicaid, contrary to Title 42, United States Code, Section 1320a-7b(b)(2).

   26. In furtherance of the conspiracy and to effect its objects, within the Eastern District of New York and elsewhere, the defendants OLGA NOVOGORODSKY, OKON UMANA, M.D., IGOR ISHCHUK, YEFIM MORCHIK, also known as "Fima," PAVEL ZBOROVSKIY, also known as "Pasha" and "Paul," and GREGORY KONOPLYA, also known as "Grisha," together with others,

committed and caused to be committed, among others, the following:

### OVERT ACTS

a.    On or about August 12, 2011, the defendant IGOR ISHCHUK paid cash to an individual, whose identity is known to the Grand Jury, who posed as a beneficiary at Cropsey ("CS-1") for past visits to Cropsey and to further induce CS-1 to receive future medical services at Cropsey.

b.    On or about January 5, 2012, the defendant YEFIM MORCHIK, also known as "Fima," paid cash to an individual, whose identity is known to the Grand Jury, ("CS-2") to induce the referral of beneficiaries.

c.    On or about February 23, 2012, the defendant GREGORY KONOPLYA, also known as "Grisha," paid cash to CS-2 to induce the referral of beneficiaries.

d.    On or about March 2, 2012, the defendant PAVEL ZBOROVSKIY, also known as "Pasha" and "Paul," accepted a payment from CS-2 to induce the referral of beneficiaries.

(Title 18, United States Code, Sections 371 and 3551 et seq.)

### COUNTS THREE THROUGH SIX
(Paying Health Care Kickbacks)

27.   The allegations contained in paragraphs 1 through 21 are realleged and incorporated as though fully set forth in this paragraph.

28.   On or about the dates identified below, within the Eastern District of New York and elsewhere, the defendants identified below, together with others, did knowingly and

10

willfully offer and pay remuneration, specifically cash kickbacks, directly and indirectly, overtly and covertly, to the persons identified below to induce such persons (1) to refer Medicare and Medicaid beneficiaries to Cropsey, Almaz, G&M and Legal Ambulette for the furnishing of and arranging for the furnishing of items and services for which payment may be made in whole and in part under Medicare and Medicaid, and (2) to purchase, lease, order and arrange for and recommend purchasing, leasing and ordering goods, facilities, services and items for which payment may be made in whole and in part under Medicare and Medicaid, as set forth below:

| | | | |
|---|---|---|---|
| THREE | IGOR ISHCHUK | 8/12/11 | Paid kickback to CS-1 |
| FOUR | YEFIM MORCHIK | 1/5/12 | Paid kickback to CS-2 |
| FIVE | GREGORY KONOPLYA | 2/23/12 | Paid kickback to CS-2 |
| SIX | GREGORY KONOPLYA | 4/5/12 | Paid kickback to CS-2 |

(Title 42, United States Code, Section 1320a-7b(b)(2); Title 18, United States Code, Sections 2 and 3551 et seq.)

## COUNTS SEVEN THROUGH EIGHT
(Receiving Health Care Kickbacks)

29.  The allegations contained in paragraphs 1 through 21 are realleged and incorporated as though fully set forth in this paragraph.

30.  On or about the dates identified below, within the Eastern District of New York and elsewhere, the defendants identified below, together with others, did knowingly and willfully solicit and receive remuneration, specifically cash kickbacks, directly and indirectly, overtly and covertly, in return for (1) referring Medicare and Medicaid beneficiaries to Cropsey, Almaz, G&M and Legal Ambulette for the furnishing and arranging for the furnishing of items and services for which payment may be made in whole and in part under Medicare and Medicaid, and (2) purchasing, leasing, ordering and arranging for and recommending purchasing, leasing and ordering goods, facilities, services and items for which payment may be made in whole and in part under Medicare and Medicaid, as set forth below:

| | | | |
|---|---|---|---|
| SEVEN | IGOR ISHCHUK | 1/26/12 | Received kickback from CS-2 |

12

| | | | |
|---|---|---|---|
| EIGHT | YEFIM MORCHIK | 1/27/12 | Received kickback from CS-2 |

(Title 42, United States Code, Section 1320a-7b(b)(1); Title 18, United States Code, Sections 2 and 3551 et seq.)

### COUNTS NINE THROUGH TWELVE
(Health Care Fraud)

31. The allegations contained in paragraphs 1 through 21 are realleged and incorporated as if fully set forth in this paragraph.

32. On or about the dates identified below, within the Eastern District of New York and elsewhere, the defendants OLGA NOVOGORODSKY and OKON UMANA, M.D., together with others, did knowingly and willfully execute and attempt to execute a scheme and artifice to defraud Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations and promises, money and property owned by, and under the custody and control of, Medicare, in connection with the delivery of and payment for health care benefits, items and services, as set forth below:

| | | | |
|---|---|---|---|
| NINE | CS-1 | 7/22/2011 | Office Visit (99213) |
| TEN | A.D. | 4/5/2012 | Office Visit (99213) |

| | | | |
|---|---|---|---|
| ELEVEN | R.Y. | 5/2/2012 | Office Visit (99214) |
| TWELVE | Z.Z. | 5/7/2012 | Office Visit (99213) |

(Title 18, United States Code, Sections 1347, 2 and 3551 et seq.)

## COUNT THIRTEEN
(Money Laundering Conspiracy)

33. The allegations contained in paragraphs 1 through 21 are realleged and incorporated as if fully set forth in this paragraph.

34. In or about and between November 2009 and October 2012, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants OLGA NOVOGORODSKY, OKON UMANA, M.D., IGOR KULESHOV, LEONID ZALKIND, also known as "Lenny" and "Lenya," NIAZALY KAIPOV, also known as "Niaz," and PAVEL ZBOROVSKIY, also known as "Pasha" and "Paul," together with others, did knowingly and intentionally conspire to conduct financial transactions affecting interstate commerce, specifically the making, cashing and depositing of checks, which transactions involved the proceeds of specified unlawful activity, specifically health care fraud, contrary to Title 18, United States Code, Section 1347, and illegal health care kickbacks, contrary to Title 42, United State Code, Section

14

1320a-7b(b), knowing that the property involved in such
financial transactions represented the proceeds of some form of
unlawful activity, (a) with the intent to promote the carrying
on of such specified unlawful activities, contrary to Title 18,
United States Code, Section 1956(a)(1)(A)(i), and (b) knowing
that such financial transactions were designed in whole and in
part to conceal and disguise the nature, the location, the
source, the ownership, and the control of the proceeds of the
specified unlawful activities, contrary to Title 18, United
States Code, Section 1956(a)(1)(B)(i).

(Title 18, United States Code, Sections 1956(h) and
3551 <u>et seq</u>.)

### COUNTS FOURTEEN THROUGH TWENTY-FIVE
(Money Laundering)

35.  The allegations contained in paragraphs 1 through
21 are realleged and incorporated as if fully set forth in this
paragraph.

36.  On or about the dates identified below, within
the Eastern District of New York and elsewhere, the defendants
identified below did knowingly and intentionally conduct and
attempt to conduct one or more financial transactions affecting
interstate commerce, which financial transactions involved the
proceeds of specified unlawful activity, specifically health
care fraud, contrary to Title 18, United States Code, Section
1347, and illegal health care kickbacks, contrary to Title 42,

15

United State Code, Section 1320a-7b(b), knowing that the property involved in the transactions represented the proceeds of some form of unlawful activity, (a) with the intent to promote the carrying on of such specified unlawful activities, and (b) knowing that such financial transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of the specified unlawful activities, as set forth below:

| | | | |
|---|---|---|---|
| FOURTEEN | OLGA NOVOGORODSKY | 1/27/12 | Negotiated Cropsey TD Bank check #1275, in the approximate amount of $900, payable to "Igor Kuleshov" |
| FIFTEEN | OLGA NOVOGORODSKY | 1/27/12 | Negotiated Cropsey TD Bank check #1274, in the approximate amount of $1,033, payable to "Semerka" |
| SIXTEEN | OKON UMANA, M.D. | 1/4/12 | Negotiated Cropsey TD Bank check #1179, in the approximate amount of $2,500, payable to "SPV" |
| SEVENTEEN | OKON UMANA, M.D. | 1/4/12 | Negotiated Cropsey TD Bank check #1180, in the approximate amount of $1,500, payable to "Pavel Zborovskiy" |
| EIGHTEEN | IGOR KULESHOV | 11/8/11 | Negotiated Cropsey Chase Bank check #3645, in the approximate amount of $1,820, payable to "Semerka, Inc." |

16

| | | | |
|---|---|---|---|
| NINETEEN | IGOR KULESHOV | 11/9/11 | Negotiated Cropsey Chase Bank check #3648, in the approximate amount of $1,513, payable to "Igor Kuleshov" |
| TWENTY | LEONID ZALKIND | 3/6/12 | Negotiated Cropsey TD Bank check #1405, in the approximate amount of $1,550, payable to "DMC Media" |
| TWENTY-ONE | LEONID ZALKIND | 3/8/12 | Negotiated Cropsey TD Bank check #1408, in the approximate amount of $1,750, payable to "DMC Media" |
| TWENTY-TWO | NIAZALY KAIPOV | 2/21/12 | Negotiated Cropsey TD Bank check #1366, in the approximate amount of $1,100, payable to "Avat Services, Inc." |
| TWENTY-THREE | NIAZALY KAIPOV | 2/21/12 | Negotiated Cropsey TD Bank check #1372, in the approximate amount of $2,200, payable to "All Resource Services, Inc." |
| TWENTY-FOUR | PAVEL ZBOROVSKIY | 1/4/12 | Negotiated Cropsey TD Bank check #1179, in the approximate amount of $2,500 payable to "SPV" |
| TWENTY-FIVE | PAVEL ZBOROVSKIY | 1/4/12 | Negotiated Cropsey TD Bank check #1180, in the approximate amount of $1,500, payable to "Pavel Zborovskiy" |

(Title 18, United States Code, Sections 1956(a)(1)(A)(i) and 1956(a)(1)(B)(i), 2 and 3551 et seq.)

CRIMINAL FORFEITURE ALLEGATIONS
AS TO COUNTS ONE THROUGH TWELVE

37.    The United States hereby gives notice to the defendants charged in Counts One through Twelve that, upon their conviction of any such offenses, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(7), which requires any person convicted of such offenses to forfeit any property, real and personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offenses.

38.    If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(a)    cannot be located upon the exercise of due diligence;

(b)    has been transferred or sold to, or deposited with, a third party;

(c)    has been placed beyond the jurisdiction of the court;

(d)    has been substantially diminished in value; or

(e)    has been commingled with other property which cannot be divided without difficulty;
it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b), to seek forfeiture of any

18

other property of such defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(7) and 982(b)).

## CRIMINAL FORFEITURE ALLEGATIONS
## AS TO COUNTS THIRTEEN THROUGH TWENTY-FIVE

39.   The United States hereby gives notice to the defendants charged in Counts Thirteen through Twenty-Five that, upon conviction of any such offenses, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), of all property involved in each offense of conviction in violation of Title 18, United States Code, Section 1956, or conspiracy to commit such offenses, and all property traceable to such property.

40.   If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(a)   cannot be located upon the exercise of due diligence;

(b)   has been transferred or sold to, or deposited with, a third party;

(c)   has been placed beyond the jurisdiction of the court;

(d)   has been substantially diminished in value; or

19

(e)   has been commingled with other property
which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18,
United States Code, Section 982(b), to seek forfeiture of any
other property of such defendants up to the value of the
forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(1) and
982(b))

A TRUE BILL

_____
FOREPERSON

_____
LORETTA E. LYNCH
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

_____
SAMUEL S. SHELDON
DEPUTY CHIEF
CRIMINAL DIVISION, FRAUD SECTION
UNITED STATES DEPARTMENT OF JUSTICE

20

FORM DBD-34

JUN 85

No._____       Action:_____

# UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL *Division*

## THE UNITED STATES OF AMERICA

*vs.*

*OLGA NOVOGORODSKY, OKON UMANA, M.D.,
IGOR ISHCHUK, IGOR KULESHOV,
LEONID ZALKIND, also known as "Lenny" and "Lenya,"
NIAZALY KAIPOV, also known as "Niaz," YEFIM MORCHIK,
also known as "Fima," PAVEL ZBOROVSKIY,
also known as "Pasha" and "Paul," and GREGORY KONOPLYA,
also known as "Grisha,"*

Defendants.

## INDICTMENT

(T. 18, U.S.C., §§ 371, 982(a)(1), 982(a)(7), 982(b),
1347, 1349, 1956(a)(1)(A)(i), 1956(a)(1)(B)(i), 2 and 3551 *et seq.*,
T. 42, U.S.C., §§ 1320a-7b(b)(1) and 1320a-7b(b)(2))

_____

*A true bill.*

_____
                                    *Foreman*

_____

*Filed in open court this _____*

*of _____ A.D. 20____     day;*

_____
                                    *Clerk*

*Bail, $ _____*

_____

***Sarah M. Hall, Trial Attorney, USDOJ (202-549-5864)***
***Shannon C. Jones, Assistant U.S. Attorney (718-254-6379)***